**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

Eastern District of Kentucky
FILED

DEC 2 3 2024

AT FRANKFORT
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

*ex rel.* VERITY INVESTIGATIONS, LLC,

　　　　　*Plaintiff/Relator*,

　　v.

BOGE RUBBER & PLASTICS USA, LLC,

　　　　　*Defendant.*

Case No. _____

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

## *QUI TAM* COMPLAINT

### I.   INTRODUCTION

1.      This is a *qui tam* case, filed on behalf of the federal government, seeking to recover nearly $4.60 million (plus mandatory trebling) that Defendant wrongfully obtained in the form of two federal guaranteed loans by falsely certifying that they were small business concerns. Those loans were later forgiven, and the federal government paid the bill.

2.      The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3.      In April 2020, the SBA authorized a first series of PPP loans, which are known as "First Draw" PPP loans.

4.      In January 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans.

5.      This case involves false applications for First and Second Draw PPP loans.

6.      The PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small."

7.      For First Draw PPP loans, applicants were required to certify that they (both the applicant and its affiliates) met the size standard—(a) collectively employed 500 or fewer persons, (b) met the SBA employee-based or revenue-based industry size standards, or (c) met the SBA alternative size standard that the maximum tangible net worth of the business is not more than $15

million and the average net income for two fiscal years before the date of the application is not more than $5 million.

8.    For Second Draw PPP loans, applicants were required to certify that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.

9.    Defendant falsely certified to the SBA that they met the size standard for a small business. As a direct result of those false statements, Defendant obtained First and Second Draw PPP loans totaling $4,547,600.00, which were later forgiven in substantial part.

10.    Relator is an outside investigative company that detected Defendant's fraud by reviewing the Defendant's and their affiliates' consolidated financial statements. Those statements demonstrate that Defendant and their affiliates had a tangible net worth that far exceeds the $15 million threshold, and employed more than 500 employees during the relevant time period.

## II.    THE PARTIES

11.    Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public.

12.    Defendant Boge Rubber & Plastics USA, LLC ("Boge USA") is a Delaware limited liability company with its principal place of business in Hebron, Kentucky.

## III.    JURISDICTION AND VENUE

13.    This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

14.    Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

15.    Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant Boge USA is "found" in this District. 31 U.S.C. § 3732(a).

## IV.    THE FALSE CLAIMS ACT

16.    The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

17.    A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

18.    Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

19.    In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

20.    Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

21.    No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

22.    The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

23.    The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

24.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

25.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.     NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

26.     On information and belief, no "public disclosure" has been made of Defendant's false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

27.     On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

28.     Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

29.     Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has

"connected the dots" between (a) Defendant's consolidated financial statements, and (b) Defendant's false certifications for the First and Second Draw PPP loans.

30.    Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.    THE FIRST DRAW PPP LOAN PROGRAM

31.    To be eligible for a First Draw PPP loan, borrowers were required to meet one of the following criteria: "employs not more than the greater of" (1) "500 employees; or" (2) "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, . . . operates;" 15 U.S.C. § 636(a)(36)(D); or (3) meets the "alternative size standard" as of March 27, 2020[1] with (a) "maximum tangible net worth of the applicant is not more than $15,000,000"; and (b) "the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000." 15 U.S.C. §§ 632(a)(5).

32.    The SBA's website explained "who may qualify" for a First Draw PPP loan. This was explained in an overview page of the website[2] and in the online "Frequently Asked Questions" document available on the website.[3]

33.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[4]

---

[1] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers Lenders at 1–2 (as of June 25, 2020), https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf.
[2] SMALL BUSINESS ADMINISTRATION, First Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.
[3] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of June 25, 2020).
[4] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers Lenders at 2 (as of June 25, 2020).

34.    That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[5]

35.    That regulation defined affiliation broadly:

a.    Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[6]

b.    Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[7]

c.    Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual,

---

[5] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[6] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[7] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[8]

  d.  Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[9]

  e.  Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[10]

  36.  The SBA required borrowers to submit a First Draw borrower application form (SBA Form 2483) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

  37.  The SBA Form 2483 required the borrower to state their "Number of Employees."

  38.  The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant . . . employs no more than the greater

---

[8] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

of 500 or [sic] employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

39.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

40.    The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

41.    The SBA guaranteed 100% of the outstanding balance of Defendant's First Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII.    THE SECOND DRAW PPP LOAN PROGRAM

42.    To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[11] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[11] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

43.     The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[12] and in the online "Frequently Asked Questions" document available on the website.[13]

44.     The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[14]

45.     The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[15]

46.     As with the First Draw PPP loan, the SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" when applying for a Second Draw PPP loan.[16]

47.     The SBA required borrowers to submit a borrower application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

48.     The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

---

[12] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[13] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of March 3, 2021).

[14] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 29 (as of March 3, 2021).

[15] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29 (as March 3, 2021).

[16] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3 (as March 3, 2021).

49.     The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

50.     The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

51.     The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VIII.   DEFENDANT FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE FIRST AND SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A.   BACKGROUND: DEFENDANT BOGE USA AND NON-DEFENDANT ENTITIES ARE AFFILIATES

#### 1.  DEFENDANT BOGE USA

52.     Defendant Boge Rubber & Plastics USA, LLC ("Boge USA") is a Delaware limited liability company and headquartered at 1102 Aviation Boulevard, Hebron, Kentucky 41048-9332.[17]

53.     Boge USA can be validly served with process via its Kentucky registered agent, Kentucky Lenders Assistance, Inc., at 828 Lane Allen Road, Lexington, Kentucky 40504.[18]

---

[17] Kentucky Secretary of State, Boge Rubber & Plastics USA, LLC (Kentucky Organization Number 0998633).

[18] Kentucky Secretary of State, Boge Rubber & Plastics USA, LLC (Kentucky Organization Number 0998633).

54.    Boge USA is an automotive supplier manufacturing and distributing "vibration control technology and lightweight components for the automotive industry."[19] In particular its "core competencies" include rubber-metal parts such as conventional and hydraulic brushings and engine mounts, and plastics such as lightweight structural components and lightweight pedal boxes.

### 2. DEFENDANT'S AFFILIATES

55.    Zhuzhou Times New Material Technology Co., Ltd. ("TMT") is a Chinese company publicly traded on the Shanghai Stock Exchange as Company Code 600458.[20] TMT was founded in 1984 as "the rubber laboratory of the former Zhuzhou Electric Locomotive Research Institute of the Ministry of Railways." Today, TMT operates as a "high-tech international manufacturing enterprise" with operations on 5 continents.[21]

56.    TMT includes the following operating subsidiaries, which are part of its network of affiliates:[22]

    a.    BOGE Rubber & Plastics

    b.    Zhuzhou CRRC Xinrui Anti-vibration Equipment Co., Ltd.

    c.    Australia Delkor Co., Ltd.

    d.    Tianjin CRRC Wind Turbine Blade Engineering Co., Ltd.

    e.    Xiangyang China Railway Hongji Engineering Co., Ltd.

    f.    Zhuzhou Times Huaxian Material Technology Co., Ltd.

---

[19] Boge Rubber & Plastics Website, https://www.boge.tech/.
[20] Shanghai Stock Exchange, Zhuzhou Times New Material Technology Co., Ltd. 600458, https://english.sse.com.cn/markets/equities/list/overview/?COMPANY_CODE=600458&STOCK_CODE=600458
[21] Zhuzhou Times New Material Technology Co., Ltd., At a Glance, https://www.crrcgc.cc/zztmt/326_22116/326_22124/index.html.
[22] Zhuzhou Times New Material Technology Co., Ltd., Subsidiaries, https://www.crrcgc.cc/zztmt/326_22116/326_22155/index.html.

    g. Qingdao CRRC Times New Energy Material Technology Co., Ltd.

    h. The Wind Power Product Division

    i. The Industrial and Engineering Division

    j. Rail Transportation Business Unit

    k. Materials Technology and Engineering Institute

57. The BOGE Rubber & Plastics division of TMT traces its history to 1931 when it was founded as Boge und Sohn KG in Bad Godesberg on the Rhine, Germany and focused on the "[d]evelopment and production of shock absorbers and rubber-to-metal products." In 2014, BOGE Rubber & Plastics was merged into TMT.[23]

58. BOGE Rubber & Plastics division identifies the following entities as its affiliates:[24]

    a. Boge Rubber & Plastics USA, LLC (a Delaware LLC)

    b. CRRC New Materials Technologies GmbH (a German entity)

    c. BOGE Elastmetall GmbH (a German entity)

    d. BOGE Elastmetall France S.A.S. (a French entity)

    e. BOGE Elastmetall Slovakia a.s. (a Slovak entity)

    f. BOGE Rubber & Plastics Brasil S.A. (a Brazilian entity)

    g. BOGE Rubber & Plastics Wuxi Co., Ltd. (a Chinese entity)

    h. BOGE Elastmetall Shanghai Co., Ltd. (a Chinese entity)

    i. BOGE Rubber & Plastics Zhuzhou Co., Ltd. (a Chinese entity)

    j. BOGE Rubber & Plastics Mexico, S.A. de C.V. (a Mexican entity)

---

[23] BOGE Rubber & Plastics, History, https://www.boge.tech/en/history.
[24] BOGE Rubber & Plastics, Locations, https://www.boge.tech/en/locations.

59.    Furthermore, TMT's annual financial reports note that BOGE USA is a wholly owned subsidiary of CRRC New Materials Technologies GmbH, which in turn is an affiliate of its controlling shareholder CRRC Zhuzhou Institute.[25]

60.    On information and belief, BOGE USA, and the entities discussed in paragraphs 55 to 59, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B.    BOGE USA'S FALSE STATEMENTS TO OBTAIN PPP LOANS**

**1.    BOGE USA FIRST DRAW LOAN**

61.    In 2020, Boge USA submitted a borrower application for a First Draw PPP loan.

62.    Boge USA submitted its borrower application, SBA Form 2483, to Heritage Bank, Inc.

63.    In its SBA Form 2483, Boge USA listed its address as 1102 Aviation Boulevard, Hebron, Kentucky 41048.

64.    In its SBA Form 2483, Boge USA certified that it and its affiliates met the small business size standard by having (1) no more than 500 employees, (2) meeting the SBA industry size standards, or (3) meeting the SBA alternative size standard.

65.    In its SBA Form 2483, Boge USA claimed it is appropriately classified under NAICS code 423120, which covers the industry for Motor Vehicle Supplies and New Parts Merchant Wholesalers. The SBA industry size standard for NAICS code 423120 is 200 employees.[26] *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

---

[25] Zhuzhou Times New Material Technology Co., Ltd., 2020 Annual Report at 39.
[26] In its SBA Form 2483-SD, Boge USA claimed it is appropriately classified under NAICS code 326291, which covers the industry for Rubber Product Manufacturing for Mechanical Use. The SBA industry size standard for NAICS code 326291 is 750 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

66.     In its SBA Form 2483, Boge USA represented that it and its affiliates had 170 employees—under the 500-employee limit and SBA industry size standard needed to be eligible to apply.

67.     Boge USA's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. Boge USA and its affiliates had (1) far more than 500 employees in 2019 and 2020 and (2) a maximum tangible net worth more than $15,000,000.

68.     Boge USA deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. Boge USA signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

69.     On or about April 30, 2020, Boge USA was approved for a First Draw PPP loan in the amount of $2,547,600 by lender Heritage Bank, Inc.

70.     The U.S. government paid lender Heritage Bank, Inc. a lender's processing fee of 1% of the $2,547,600 loan, in the amount of $25,476.00.[27]

71.     On or about July 21 2021, the U.S. government forgave a portion of Boge USA's First Draw PPP loan in the amount of $2,578,310.79.

## 2. BOGE SECOND DRAW LOAN

72.     In 2021, Boge USA applied for a Second Draw PPP loan.

73.     Boge USA submitted its borrower application form, SBA Form 2483-SD, to Heritage Bank, Inc.

74.     In its Form 2483-SD, Boge USA listed its address as 1102 Aviation Boulevard, Hebron, Kentucky 41048.

---

[27]     Paycheck    Protection    Program    (PPP)    Information    Sheet:    Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet. pdf.

75.    In its SBA Form 2483-SD, Boge USA represented that it and its affiliates had 135 employees—under the 300-employee limit needed to be eligible to apply.

76.    Boge USA's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Boge USA and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

77.    Boge USA deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Boge USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

78.    On or about February 6, 2021, Boge USA was approved for a Second Draw PPP loan in the amount of $2,000,000 by lender Heritage Bank, Inc.

79.    The U.S. government paid lender Heritage Bank, Inc. a lender's processing fee of 1% of the $2,000,000 loan, in the amount of $20,000.[28]

80.    On or about March 31, 2022, the U.S. government forgave 100% of Boge USA's Second Draw PPP loan, plus interest, in the amount of $2,022,575.34.

C.    **EVIDENCE OF MORE THAN 500 EMPLOYEES**

81.    In its SBA Form 2483 and SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

---

[28]    Paycheck   Protection   Program   (PPP)   Information   Sheet:   Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet. pdf.

82.    On its website, TMT claims it has over 6,800 employees worldwide, including over 2,000 technical teams.[29]

83.    The BOGE Rubber & Plastics division of TMT alone claims to have "around 3,600 employees in seven countries on four continents."[30]

84.    The annual financial reports for Defendant's affiliates indicate that the affiliates had far more than 500 employees in 2019 and 2020. For instance, in 2019 TMT reported that TMT and its affiliates had 6,541 employees.[31] In 2020, TMT reported that TMT and its affiliates had 6,244 employees.[32]

85.    If Defendant had counted their affiliates' employees in their First Draw and Second Draw PPP loan applications, they would have reported far more than the 500- and 300-employee limits in each application, respectively.

86.    On information and belief, Defendant's and its affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendant always knew—that they and their affiliates collectively employed well over 500 employees throughout the time period 2019–2021.

**D.    EVIDENCE OF NET WORTH GREATER THAN THE ALTERNATIVE SIZE STANDARD**

87.    Defendant was not eligible for First Draw PPP loans under the SBA's alternative size standard. As of December 31, 2019 and December 31, 2020, Defendant and their affiliates had a maximum tangible net worth of the business more than $15 million. Accordingly, Defendant would not have been eligible because they failed the first "tangible net worth" prong of the alternative size standard.

---

[29]    Zhuzhou    Times    New    Material    Technology    Co.,    Ltd.,    Talent    Team, https://www.crrcgc.cc/zztmt/326_22116/326_22175/index.html.
[30] Boge Rubber & Plastics Website, https://www.boge.tech/.
[31] Zhuzhou Times New Material Technology Co., Ltd., 2019 Annual Report at 55.
[32] Zhuzhou Times New Material Technology Co., Ltd., 2020 Annual Report at 52.

88.     The annual financial reports for Defendant's affiliates demonstrate that Defendant and its affiliates had a maximum tangible net worth of **at least $388 million** in 2019 and 2020—far above the $15 million dollar threshold.

89.     TMT's tangible net worth may be calculated from information reported in the balance sheet included with its annual financial reports:[33]

| Currency: Chinese Yuan (CNY) | 12/31/2019 | 12/31/2020 |
|---|---|---|
| **Total Assets** | 15,566,475,239 | 15,996,427,449 |
| Less: Total Liabilities | (10,739,229,049) | (11,058,102,091) |
| **Net Worth** | 4,827,246,190 | 4,938,325,358 |
| Less: Long-term Receivables | (76,372,800) | (46,514,313) |
| Less: Long-term Equity Investments | (387,556,326) | (370,370,577) |
| Less: Right-of-use Assets | (555,182,134) | (527,532,184) |
| Less: Intangible Assets | (404,554,417) | (373,754,837) |
| Less: Development Expenditures | (9,609,841) | (3,276,251) |
| Less: Goodwill | (2,745,669) | (2,735,213) |
| Less: Long-term Deferred Expenses | (42,657,553) | (86,526,784) |
| Less: Deferred Tax Assets | (154,548,720) | (241,595,710) |
| Less: Other Non-Current Assets | (511,990,378) | (467,180,987) |
| **Tangible Net Worth** | **2,682,028,351** | **2,818,838,505** |

90.     For 2019, the average exchange rate of 1 Chinese Yuan (CNY) to the United States Dollar was 0.14472 USD.[34] Accordingly, TMT's tangible net worth as of December 31, 2019 was $388,143,143 United States Dollars.

---

[33] Zhuzhou Times New Material Technology Co., Ltd., 2020 Annual Report at 60–61.
[34] Internal Revenue Service, Yearly Average Currency Exchange Rates, https://www.irs.gov/individuals/international-taxpayers/yearly-average-currency-exchange-rates. For 2019, on average 1 United States Dollar (USD) was equivalent to 6.910 Chinese Yuan. Accordingly, 1 Chinese Yuan (CNY) was equivalent to 0.14472 USD.

91.    For 2020, the average exchange rate of 1 Chinese Yuan (CNY) to the United States Dollar was 0.14493 USD. [35] Accordingly, TMT's tangible net worth as of December 31, 2020 was $408,534,265 United States Dollars.

92.    Given the tangible net worth of their affiliates, Defendant could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

93.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

94.    Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of First and Second Draw PPP loans.

95.    Each Defendant's knowingly false claim in its SBA Form 2483 and/or SBA Form 2483-SD was material to the lender's decisions to issue the First and Second Draw PPP loans and was material to the SBA's decisions to forgive those loans and repay the lender.

96.    But for Defendant's knowingly false claims, the lender would not have issued the loans and the SBA would not have forgiven them.

97.    Each First and Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

---

[35]    Internal Revenue Service, Yearly Average Currency Exchange Rates, https://www.irs.gov/individuals/international-taxpayers/yearly-average-currency-exchange-rates. For 2020, on average 1 United States Dollar (USD) was equivalent to 6.900 Chinese Yuan. Accordingly, 1 Chinese Yuan (CNY) was equivalent to 0.14493 USD.

98.     Each First and Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

99.     The Government later reimbursed the lender almost 100% of the amounts of Defendant's First and Second Draw PPP loans, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

100.     Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

101.     Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, their SBA Forms 2483 and SBA Forms 2483-SD and included certifications—to support false claims submitted to the lender for approval of First and Second Draw PPP loans.

102.     Defendant's knowingly false records and statements were material to the lender's decisions to issue the First and Second Draw PPP loans and were material to the SBA's decisions to forgive each loan and repay the lender.

103.     But for Defendant's knowingly false records and statements, the lender would not have issued the loans and the SBA would not have forgiven them.

## PRAYER FOR RELIEF

**WHEREFORE,**     Relator     requests     judgment     against     Defendant     for: (i)     three     times     the     amount     of     damages     that     the     United     States     has     sustained (including     the     full     amount     of     the     forgiven     First     and

Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: December 23, 2024                                  Respectfully submitted,



Joseph A. Bilby
**BILBY LAW PLLC**
106 Progress Drive
Frankfort, KY 40601
Telephone: (502) 409-1778
joe@bilbylaw.com

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*